IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| KELLI L. THOMPSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: _____ |
| UNUM LIFE INSURANCE COMPANY | ) |
| OF AMERICA; and UNUM GROUP | ) |
| CORPORATION, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

Plaintiff brings this action against the Defendants and files her Complaint pursuant to the Employment Retirement Income Security Act ("ERISA") as follows:

## PARTIES

1. The plaintiff, Kelli L. Thompson, is a citizen and resident of Tennessee who resides in Campbell County, Tennessee and was employed in Knox County, Tennessee.

2. The Defendant UNUM Group Corporation is, upon information and belief, a Delaware Corporation whose principal place of business is Chattanooga, Tennessee, who may be served with process by serving Corporation Service Company, 2908 Poston Avenue, Nashville, Tennessee 37203.

1

3. Defendant UNUM Life Insurance Company of America is the entity that insured the Plan benefits in question. UNUM Life Insurance Company of America may be served with process by serving the Commissioner of the Tennessee Department of Commerce and Insurance, 500 James Robertson Parkway, Suite 660, Nashville, Tennessee 37243.

4. The Defendant UNUM Group Corporation exercised authority or control respecting the management or disposition of the plan assets, and is therefore, a "fiduciary" as that term is defined by 29 U.S.C. § 1002(21).

5. Furthermore, the Defendant UNUM Group provides services to the plan at issue, and as such is a "party in interest" as that term is defined by 29 U.S.C. § 1002(14).

6. The Defendants are collectively referred to as UNUM.

## JURISDICTION AND VENUE

7. Jurisdiction and venue are proper in this district because UNUM's principal place of business is Chattanooga, Tennessee, and UNUM was responsible for the administration of the Plaintiff's claim for benefits. Therefore, a substantial part of the events or omissions giving rise to the Plaintiff's Complaint occurred in or around Chattanooga, Tennessee and Knoxville, Tennessee. Therefore, venue is proper within the Eastern District of Tennessee pursuant to 29 U.S.C. § 1132(e)(2) given that 'a defendant resides or may be found' within the Eastern District of Tennessee.

8. Venue is further appropriate in that a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred within this District. Therefore, venue is proper within the Eastern District of Tennessee pursuant to 29 U.S.C. § 1132(e)(2) given that "the breach took place" within the Eastern District of Tennessee.

9. Jurisdiction is appropriate under 28 U.S.C. § 1331 in that 29 U.S.C. §1132(e) confers jurisdiction upon the district courts of the United States where, as here, Plaintiff's claims relate to an "employee welfare benefit plan" as that term is defined within 29 U.S.C. § 1001, <u>et. seq</u> and the Defendants "may be found" within this district.

## **PLAINTIFF'S EMPLOYMENT**

10. Plaintiff began working for the Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C. ("Baker Donelson") (formerly known as the Baker, Worthington, Crossley, Stansberry & Woolf) on August 7, 1989 and was continuously employed as an attorney there until September 30, 2015.

11. Plaintiff is an attorney licensed to practice in the State of Tennessee since October of 1989 and served in numerous capacities with Baker Donelson as an associate attorney, shareholder, office managing shareholder, and of counsel.

12. Plaintiff was diagnosed with rheumatoid arthritis ("RA") in October of 2001 which has resulted in numerous, chronic and debilitating medical issues, and as a result, she became unable to perform the material and substantial duties of her occupation as an attorney in 2015.

13. Plaintiff maintained a long term disability policy throughout her employment with Baker Donelson since 1989 and since her diagnosis with RA in October of 2001.

14. Since 2001, Plaintiff suffers from RA resulting cognitive impairment, arthritis, severe joint and tissue pain, joint damage in multiple joints, lung damage, swelling, and chronic fatigue.

15. These problems collectively caused Plaintiff's condition to deteriorate to the point that she could no longer perform the material and substantial duties of her occupation as an attorney

3

Case 3:17-cv-00253-TRM-HBG   Document 1   Filed 06/12/17   Page 3 of 18   PageID #: 3

effective in 2015. Plaintiff's employment ended effective September 30, 2015, because she could not perform the material and substantial duties of her occupation.

16. In September of 2015, Plaintiff applied for long term disability benefits pursuant to the Policy she had maintained throughout her employment. UNUM denied her benefits based on an ability to perform a job with much lower requirements than Plaintiff's position or any comparable position as an attorney. In addition, UNUM denied her benefits despite the plain language defining disability under the policy.

## THE POLICY AT ISSUE

17. As part of Plaintiff's employment with the Baker Donelson, Plaintiff was offered long-term disability (LTD) coverage and benefits funded by premiums paid by Plaintiff and for which a policy was issued by UNUM.

18. The Plan is deemed "employee welfare benefit plan" as that term is defined in 29 U.S.C. § 1001, et. seq.

19. Plaintiff is a "participant" and a "beneficiary" in the employee welfare benefit as those terms are defined under 29 U.S.C. § 1001, et. seq.

20. Plaintiff is disabled under the terms of the employee welfare benefit plan issued by UNUM. At the time the Plaintiff's employment ended on September 30, 2015, the Plaintiff was covered by a LTD policy issued by UNUM ("LTD Policy").

21. With respect to LTD benefits, the LTD Policy defines disability as follows:

### *HOW DOES UNUM DEFINE DISABILITY?*

4

You are disabled when Unum determines that due to your sickness or injury:

1. You are unable to perform the **material and substantial duties** of your **regular occupation** and are not working in your regular occupation or any other occupation**, or**

2. You are unable to perform **one or more of the material and substantial duties** of your regular occupation and you have a **20% or more loss in your indexed monthly earnings while working in your regular occupation**.

You must be under the regular care of a physician in order to be considered disabled.

22. Defendants' denial of Plaintiff's benefits was not and is not supported by substantial evidence or the plain meaning of the language in the Policy defining disability.

## PLAINTIFF'S CONDITION

23. Plaintiff suffers from Rheumatoid Arthritis (RA) resulting cognitive impairment, arthritis, severe joint and tissue pain, swelling, joint damage, and chronic fatigue. Over a period of approximately 14 years, the problems caused by RA collectively caused Plaintiff's condition to deteriorate to the point that she could no longer perform the high-level functions of her demanding position as an attorney and as defined by the LTD Policy.

24. Plaintiff was diagnosed with RA in October of 2001. At the time of her diagnosis in October of 2001, Plaintiff was employed as a shareholder attorney at Baker, Donelson.

25. Plaintiff continued to be employed for approximately 14 years following her diagnosis in numerous capacities as an attorney with Baker Donelson, despite suffering multiple and debilitating effects from RA, including hospitalizations and multiple surgeries.

26. During the Summer and Fall of 2001, the Plaintiff began to experience significant and debilitating pain in numerous joints to the point where she began to lose the ability to perform everyday tasks such as driving or getting dressed for work. Simple movements such as lifting an arm to answer the telephone caused excruciating pain.

27. The Plaintiff underwent numerous diagnostic tests and was diagnosed with RA in October of 2001. Following the Plaintiff's diagnosis of RA, she was prescribed a biologic immunosuppressant drug Enbrel. Enbrel costs approximately $2,000 per month and is an injection.

28. The Plaintiff's response to Enbrel showed good promise so that she felt she could continue to work in her position as an attorney.

29. Despite her favorable response to regular, expensive medication, the Plaintiff developed bilateral pneumonia in the Fall of 2004 and was hospitalized for six days. The Plaintiff's type of pneumonia was exacerbated by her RA, and as a result, her condition required 24 hour oxygen treatment for approximately 2 months, high doses of antibiotics and steroids, in addition to discontinuing her Enbrel injections during the same time period.

30. Over the course of the next several years, the Plaintiff developed significant problems related to the use of her elbows which also impacted the use of her hands. Since approximately 2009, the Plaintiff has been significantly limited in the ability to write with her hands which in turn impacted her ability to perform some of the essential duties of her job as an attorney.

6

Case 3:17-cv-00253-TRM-HBG   Document 1   Filed 06/12/17   Page 6 of 18   PageID #: 6

31. The Plaintiff underwent significant elbow surgery in 2010, but her ability to use her elbows and hands continued to be limited and diminished over time. The Plaintiff cannot use her hands to take notes or engage in any writing except very limited, and there are many times where it is difficult to sign her name.

32. In addition to the limited use of her elbows and hands, the Plaintiff experiences frequent limitations due to chronic fatigue caused by her RA. The chronic fatigue associated with her condition impacts her ability to concentrate, analyze complex and detailed legal matters, travel and maintain regular attendance to meet client's needs. The Plaintiff's condition has progressively worsened over the course of her treatment for and suffering with a chronic, debilitating condition, so that she can no longer perform the requirements of her position as an attorney and such that she meets the definition of disability under her LTD Policy. As a result, she has been wrongfully denied, past and future benefits.

## PLAINTIFF'S CLAIM FOR LTD BENEFITS

33. On October 30, 2015, Dr. Capps opined that Plaintiff was permanently disabled due to RA and that this prevented her from performing her daily occupational tasks on a full-time basis.

34. Dr. Capps' found that even when RA is under fairly good control, the Plaintiff experienced joint problems that can be aggravated by the stress of her position as an attorney resulting in pain, joint damage and functional loss. In addition, Dr. Capps stated that the fatigue is the most difficult problem to treat and can cause deterioration in mental alertness and

7

Case 3:17-cv-00253-TRM-HBG   Document 1   Filed 06/12/17   Page 7 of 18   PageID #: 7

sharpness. Dr. Capps stated that the Plaintiff had been "extraordinarily tough" and has tried to work through the effects of her RA for years, and that he absolutely supported her in her application for permanent disability under her LTD Policy.

35. The Plaintiff's employer terminated her employment effective September 30, 2015 because she was unable to meet the requirements for the essential functions of her position as an attorney, and the Plaintiff applied for disability benefits under her LTD Policy.

36. The Plaintiff had continually maintained her LTD Policy throughout her employment, including the fourteen years following her diagnosis with RA.

37. After the Plaintiff applied for disability benefits under her LTD Policy, UNUM advised that it needed additional time to obtain records and information regarding the Plaintiff's condition in addition to the information provided by Dr. Capps in support of the Plaintiff's claim for disability benefits.

38. During the time period it advised the Plaintiff it was obtaining additional information, UNUM obtained only one year of medical records related to the Plaintiff's treatment for RA for a condition that the Plaintiff had been continuously treated for approximately 14 years.

39. UNUM had two of its own in-house physicians completed a paper review for UNUM and found that there was not enough evidence to support Dr. Capps' opinion of permanent disability and that Plaintiff could perform sedentary work. UNUM took approximately five months to review only one year of medical records from Dr. Capps and have two of its own physicians find based on this very limited information that Dr. Capps' opinion of permanent disability was not supported by the evidence.

40. Defendants denied Plaintiff's disability claim by letter dated March 29, 2016 ("Denial Letter"), a copy of which is enclosed as *Exhibit A*. UNUM's basis for the decision was that the "clinical information (Dr. Capps' medical records from April 2015 to March 2016 which UNUM obtained) did not support the restrictions and limitations or functional capacity as stated by Dr. Capps." Denial Letter p. 2, paragraph 1. Defendants' decision also relied upon a self-serving assessment of Plaintiff's occupational requirements rather than the actual requirements described by Plaintiff and her employer and those required for any such position as an attorney in the national economy.

41. Plaintiff appealed the denial of benefits on September 13, 2016, according to the procedures governed by her LTD Policy. As part of her appeal, Plaintiff included her medical records from Dr. Capps since he began treating her in November of 2002 as well as extensive information about her condition, its impact on her ability to meet the essential and functional requirements of her position as an attorney.

42. The Plaintiff also submitted extensive information which demonstrated she meet both definitions for disability under the UNUM Policy. The information submitted by the Plaintiff included 14 years of medical records from Dr. Capps, additional medical records, information regarding the requirements of her position as an attorney, and information regarding the Plaintiff's work history and compensation. The information submitted established disability under both prongs of the disability definition under the LTD Policy.

43. The Plaintiff also submitted information which demonstrated that under the second prong of the definition of disability under the LTD Policy that she unable to perform **one or more** of

the material and substantial duties of her regular occupation and that she had a 20% or more loss in her indexed monthly earnings while working in her regular occupation.

44. Less than 45 days after submitting the Plaintiff's appeal, UNUM again denied disability benefits under the LTD Policy on October 27, 2016. A copy of the denial letter is attached as ***Exhibit B.***

45. UNUM took the position that the Plaintiff did not meet the first definition of disability under the LTD Policy because Dr. Capps' notes contained favorable assessments of the Plaintiff's condition at the various times of examination. However, UNUM's decision failed to consider that the same assessments of Dr. Capps in his medical records were also considered by him when he gave an opinion that the Plaintiff was permanently disabled.

46. In addition, UNUM denied that the Plaintiff was disabled under the plain language of the second prong of the LTD Policy's definition of disability. UNUM acknowledged that Plaintiff had experienced a 20% reduction in income, and that she could not perform one or more of the material requirements of her position as an attorney. Instead of approving her benefits under the second prong of the disability definition, UNUM suggested that previous carriers of LTD coverage through plaintiff's employer may be responsible since her condition has spanned so many years.

47. The same entity that made the decision to deny benefits would have been required to pay any benefits due out of its own funds.

48. The defendant that made the decision to deny benefits was under a perpetual conflict of interest because the benefits would have been paid out of that same defendant's funds.

49. The defendant that made the decision to deny benefits allowed its concern over the funds to be paid to influence its decision making process.

50. The defendant that made the decision to deny benefits considered the applicability of ERISA in making said decision to deny benefits.

51. Since receiving the decision(s) on appeal, Plaintiff requested "relevant" documentation pursuant to 29 C.F.R. 2560.503-1(h)(2)(iii).

52. In responding to that request, UNUM failed to produce a number of documents contrary to the foregoing regulation. For example, UNUM:

   (a) failed to produce its claims manual which governed its administration of Plan benefits;

   (b) failed to produce documents exchanged with or generated in the course of claims administration by its vendors;

   (c) failed to produce documents relating to its bonus and incentive compensation program applicable to its claims handlers; and

   (d) Failed to produce any documents sent to, received by, or created by its legal department in connection with the administration of Plaintiff's claim. UNUM objected to producing any documents it claimed were protected by the attorney-client privilege, but it failed to provide a privilege log identifying any such documents withheld.

53. The disability claim file produced omits numerous records, particularly those involving correspondence exchanged with outside parties and notes generated during the course of its claims administration such as those taken by its medical reviewers.

54. In administering the disability claim, Defendants have committed numerous breaches and error including the following:

    (a) Targeting Plaintiff's claim for denial when it was learned her claim was governed by ERISA;

    (b) Failing to take any meaningful measures to insulate the claims personnel who handled Plaintiff's claim from Defendants' inherent conflict under the Supreme Court case *Glenn v. MetLife* and instead allowing its profit motive to influence these persons to engineer the termination and closure of Plaintiff's claim;

    (c) Withholding numerous relevant documents and information from Plaintiff during the claims process;

    (d) Depriving Plaintiff of the ability to obtain a full and fair review of the claim;

    (e) Taking an adversarial posture against Plaintiff instead of a fiduciary posture by openly searching for ways to avoid paying part or all of her claim;

(f) Failing to accord any weight at all to Plaintiff's medical providers and instead relying on "paper reviewers" to determine the medical cause of Plaintiff's overall disability;

(g) Purposefully limiting and curtailing the review of medical consultants and otherwise improperly exerting influence on them to opine against payment of benefits;

(h) Purposefully and persistently misleading Plaintiff into believing Plaintiff did not need to submit any additional medical documentation in support of the claim and otherwise refusing to tell Plaintiff what was needed to provide before the claim could be perfected and paid;

(i) Unreasonably and arbitrarily overruling the professionals who personally examined Plaintiff or allowing any of them the opportunity to "peer review" Defendants' reviewers after Plaintiff completed the appeal (essentially conducting a one-way medical review process);

(j) Failing to give Plaintiff's claim a full co-morbid review and give any consideration to how Plaintiff's conditions impacted one another; and

(k) Conducting a new review on appeal creating new "evidence" to which Plaintiff had no opportunity to respond administratively.

55. Despite Plaintiff's established disability under the terms of the Plan taking into account her condition as a whole and her physicians' submission of medical records supporting

13

such as well as her physician's opinions that she was permanently disabled, the UNUM claims team here determined that Plaintiff was capable of working.

56. As set forth above in connection with Defendants' fiduciary breaches, their claims decision was the product of a conflict of interest whereby the claims personnel assigned to Plaintiff allowed the financial interests of Unum to supersede their fiduciary obligations to Plaintiff. Under *Glenn*, this presents an additional reason for application of a *de novo* standard to their claims decision.

57. Defendants considered the applicability of ERISA before making its decision. This presents an additional reason for application of a *de novo* standard to their claims decision.

58. Defendants failed to provide Plaintiff with a meaningful opportunity for a full and fair review of her claims for benefits as required by 29 U.S.C. § 1133 and 29 C.F.R. 2560.503-1.

59. Defendants refused to provide Plaintiff with relevant documentation concerning the Plan and the claim generally which controlled how the claim was administered.

60. Defendants' decision process in this matter did not comport with 29 U.S.C. § 1133's requirement that any notice of the denial must contain the specific reasons for such denial, written in a manner calculated to be understood by the participant, and must comport with Department of Labor Regulations.

61. Plaintiff has exhausted all Plan remedies. As such, this case is ripe for determination, and the Plaintiff has timely filed this action against the Defendants.

14

Case 3:17-cv-00253-TRM-HBG Document 1 Filed 06/12/17 Page 14 of 18 PageID #: 14

# COUNT I
## RELIEF UNDER 29 U.S.C. § 1132(a)

62. Plaintiff adopts and incorporates all of the paragraphs above as though fully set forth herein.

63. The Plan is deemed "employee welfare benefit plan" and/or "employee pension plan" as those terms are defined in 29 U.S.C. § 1001, et. seq.

64. Plaintiff is a "participant" and a "beneficiary" in the employee welfare benefit and/or pension plan as those terms are defined under 29 U.S.C. § 1001, et. seq.

65. Plaintiff is disabled under the terms of the employee welfare benefit plan as to long term disability benefits and life waiver of premium benefits.

66. Defendants' denial of the Plaintiff's benefits was not and is not supported by substantial evidence.

67. Defendants' denial of the Plaintiff's benefits was and is not support by the plain language of the LTD Policy defining disability.

68. Defendants denied Plaintiff's benefits to which she was entitled under the terms of the employee welfare benefit plan/insurance policy or policies by refusing to provide payment of benefits.

69. The decision making process did not comport with 29 U.S.C. § 1133's requirement that any notice of the denial must contain the specific reasons for such denial, written in a manner

15

calculated to be understood by the participant, and must comport with the Department of Labor Regulations.

70. The decision making process did not provide a reasonable opportunity to Plaintiff for a full and fair review of the decision denying the claim, as is required by 29 U.S.C. § 1133 and 29 C.F.R. 2560.503-1.

71. The appellate procedures did not provide Plaintiff with a full and fair review. For example, Defendants took approximately 5 months to make the first denial decision although it had very limited medical records or other evidence. Then, after the Plaintiff submitted extensive documentation in support of her claim, the Defendants took less than 45 days to deny her appeal.

72. Defendants' actions were unreasonable and/or arbitrary and capricious and in violation of the terms of the employee welfare benefit plan/insurance policy.

73. UNUM's claims process and claims decisions were tainted by conflict of interest which motivated claims personnel to deny Plaintiff's claim.

74. As a direct and proximate result of the conduct of Defendants in failing to provide benefits for Plaintiff's disability and/or terminating benefits, and in failing to provide a full and fair review of the decision to deny benefits and/or terminate benefits, Plaintiff has been damaged in the amount equal to an amount of benefits to which Plaintiff would have been entitled under the Plan, in an amount equal to future benefits payable while Plaintiff remains disabled under the terms of the Plan, and additional damages to be proven in the trial of this matter.

16

Case 3:17-cv-00253-TRM-HBG   Document 1   Filed 06/12/17   Page 16 of 18   PageID #: 16

75. The Plaintiff has been deprived of the benefits she is entitled to under her LTD Policy for which she paid premiums for approximately 25 years, and the Plaintiff has been and remains permanently disabled as defined under the LTD Policy.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Kelli L. Thompson, respectfully requests this court find jurisdiction and venue appropriate, and after trial, grant her the following relief:

a. Require the defendants to file a complete copy of the Administrative Record with the Court, including the Claims Manual which was utilized or governed the Defendants' administration of the Plaintiff's claim;

b. Award Plaintiff past benefits due and payable under the terms of the employee welfare benefit plan/insurance policy(ies) pursuant to 29 U.S.C. § 1132(a)(1);

c. Enter a declaratory judgment as to Plaintiff's entitlement to future benefits and an appropriate order directing Defendants to pay all similar claims of Plaintiff in the future pursuant to 29 U.S.C. § 1132(a)(1);

d. Should Defendants voluntarily pay all past due benefits, enter a declaratory judgment as to Plaintiff's entitlement to future benefits, along with entering an appropriate order directing Defendants to pay similar claims to Plaintiff in the future, or in the alternative, for the Court to remove Defendants from their fiduciary roles in the administration of the Plan, and to appoint a special master to substitute for this Defendant with the special master having the authority to make all determinations as to Plaintiff's entitlement to future benefits;

e. For a judgment against Defendants awarding Plaintiff prejudgment interest, costs and expenses, including reasonable attorneys' fees as permitted under 29 U.S.C. § 1132(g)(1);

f. For an order enjoining Defendants from further breaches of fiduciary or co-fiduciary duties, and direct that Defendants exercise reasonable care, skill, prudence, and diligence in the administration of Plaintiff's claim;

g. For an order finding Defendants jointly and severally liable for the breaches described herein;

h. For an order requiring Defendants to provide Plaintiff with any additional benefits to which Plaintiff would be entitled pursuant to a finding that Plaintiff is disabled under the Plan(s);

i. For an order finding Defendants liable for breach of fiduciary duty; and

j. Such other relief as may be deemed just and proper.

FILED this 12th day of June, 2017.

/s/ *Kelli L. Thompson*

Kelli L. Thompson BPR 13977
497 Fox Ridge Lane
Caryville, Tennessee 37714
(865)406-7655
kellilthompson@outlook.com